GEORGE A. FROST, in equity, *vs.* THEODATE FROST *et als.*

*Trust—by what writing created and evidenced. Statute of limitations. Trustee—bill in equity against.*

Robert Moon conveyed an undivided half of a tract of land on which there was a mill privilege without consideration to Ichabod Frost, who, reserving a right to make improvements on the same, gave back a bond, of the same date as the deed, to Moon, conditioned to reconvey the premises upon demand and the payment of all improvements he might make upon the tract, if he should not sell it within ten years from date; and further conditioned, in case it should be sold, to pay Moon one hundred dollars, he (Moon) accounting, in that event, for half of the expenses incurred in improvements; he (Moon) to receive the rents and profits of the whole tract during that time; *held,* that Frost held the estate so conveyed to him in trust for Moon.

The form in which a trust in writing is created is immaterial. It may be by letter, memorandum, the recitals of an indenture or a deed, or the conditions of a bond.

The provision of R. S., c. 111, § 6, by which, when a party who had contracted in writing to convey real estate dies, the other party, seeking a performance, is required to bring his bill against the heirs, devisees, executors or administrators, within three years from the grant of administration, &c., and give the executor or administrator written notice of the existence of the contract within one year from such grant, does not apply to the case of a trust evidenced by writing.

By the terms of the contract Frost was to sell the whole estate before he was entitled to have half upon payment of an hundred dollars.

When a trustee wrongfully conveys the trust estate, and subsequently receives a reconveyance of it, he holds the estate, after regaining title, as trustee, subject to the original trust.

A demand by Moon upon Frost for a deed, when Frost refused to deliver one and rendered no account of any expenses by the way of improvements, was valid, without any tender of such expenses.

A demand, binding upon the obligor, is binding, in case of his death, upon his heirs, devisees, executors and administrators.

As between the trustee and the *cestui que trust* the statute of limitations, in case of a written trust, does not run against the *cestui que trust*; at any rate, not until there has been an open and express denial of his right, and what amounts to adverse possession on the part of the trustee.

It is only necessary that a bill should be verified by oath when it is for the purpose of discovery or for an injunction.

BILL IN EQUITY.

April 8, 1845, Robert Moon owned land bordering upon the Mousam river in Sanford, at a point where it was supposed a dam and mills could be profitably erected. To facilitate a sale of it for this improvement, Moon conveyed an undivided half of it, on that day, to the late Ichabod Frost since deceased, taking back the bond of the same date, the condition of which is recited in the opinion. Just before the expiration of the ten years within which the power of sale was intrusted to said Frost, he went to Saco and there made a conveyance of the half of the premises deeded to him by Moon to one Boyd who, at the same time and as part of the same transaction, reconveyed it, by deed of warranty, to Frost, who put his deed to Boyd upon record soon after, but retained the one from Boyd to him for more than a year before recording it.

Robert Moon conveyed his interest in this property to his son, Duxbury Moon, who transferred it to the complainant. The respondents are the widow and children of Ichabod Frost and hold whatever title he had.

A demurrer was filed by all the defendants, and they all answered, and documentary proofs and depositions were put in on both sides. The questions presented and decided appear by the opinion.

*Asa Low*, for the complainant.

*I. S. Kimball* and *Howard Frost*, for the respondents.

APPLETON, C. J. This is a bill, in which the plaintiff, as assignee of Robert Moon, seeks to compel the reconveyance of certain real estate originally held in trust by Ichabod Frost for the benefit of said Moon or his assignees, and which has descended to said defendants as heirs at law of said Frost charged with said trust, and in which the said Theodate claims dower as the widow of said Frost.

The defendants have severally demurred and answered to the

Frost *v.* Frost.

bill. Numerous questions have been presented by the bill, answer and proof, as well as by the demurrer, which it will become necessary severally to consider.

I. Robert Moon, from whom the plaintiff derives his title, by deed dated April 8, 1845, conveyed to Ichabod Frost, deceased, an undivided half of a certain tract of land therein described. On the same day said Frost gave back to said Moon a bond relating to said land, the condition of which was as follows : "That whereas the said Moon had conveyed as aforesaid, the said Ichabod Frost is to use his endeavor to sell said tract of land and a mill privilege being thereon, for the purpose of erecting a dam and mill on said Mousam river; but if said Frost shall not sell said mill privilege as aforesaid within the space of ten years hereafter, then said Frost is to convey said tract or parcel of land to said Moon, his executors, administrators or assignees, by a good and sufficient deed of quitclaim of said premises on demand and upon payment for all improvements which said Frost, at his own expense shall make upon said premises. And, furthermore it is conditioned, that if said Frost shall make sale of said premises as aforesaid within said space of ten years, then said Frost is to pay said Moon one hundred dollars upon demand made upon him by said Moon, or by his lawful agents, representative or attorney; and in the meantime—that is to say, previous to the sale as aforesaid to be made by said Frost, said Moon may occupy and improve said tract of land for his own benefit and receive all the rents and profits thereof without molestation by said Frost; reserving to said Frost the right to enter and sell and make improvements on said land, or to erect a dam across said river, or to erect any mill or mills on said land, within said time, if he may deem it advisable; provided moreover, that said Moon shall pay one-half of all expenses, which may be reasonably incurred in selling and erecting a dam across said river on said premises."

No other consideration for the deed to Frost is satisfactorily shown to exist than the bond bearing the same date therewith. The form in which a trust is created is immaterial. A mere mem-

orandum, a letter, or any writing of an informal and untechnical character will suffice, if it clearly express the gift in trust and connect the trustee with the subject matter of the trust. Hill on Trustees, 64. So the declaration of a trust may be contained in an indenture between parties, in the recitals of a deed, or in the conditions of a bond. *Bragg* v. *Paulk*, 42 Maine, 502.

It is obvious that Frost was not the purchaser of the land conveyed, for there was no sale. He was not the mortgagor, for there was no debt to secure. He had not the uncontrolled disposition of the property conveyed to him, for he did not own it. He held the land for the purpose of selling the mill privilege thereon within ten years, with the further right of making improvements on his own, or on joint account; the grantor, Moon, in the meantime to occupy and improve the land for his own benefit and receive the rents and profits therefrom. If the land was not sold at the expiration of the time limited in the bond, Frost was to reconvey the premises to his grantor, upon payment of all improvements he might have made. The conclusion from an examination of the contract is, that Frost held the premises in trust.

II. It is provided by R. S., c. 111, § 6, "if a person, who has contracted in writing to convey real estate, dies before making the conveyance, the other party may have a bill in equity in the supreme judicial court to enforce specific performance thereof against his heirs, devisees, executors or administrators, if commenced within three years from the grant of administration, or the time when he is entitled to such conveyance, but not exceeding four years after the grant of administration, if written notice of the existence of the contract is given to the executor or administrator within one year after the grant of administration." It is insisted, that, as there was no written notice given within the year after the grant of administration, this bill is not sustainable.

But the premises in question being held in trust, the above section does not apply. That relates to cases where the owner of land contracts to convey on certain terms and conditions land of his own, not when he holds property in trust. This provision was

Frost *v.* Frost.

not intended to diminish or to destroy the rights of the *cestui que trust.* The object was to enforce the performance of a contract within a limited time after the grant of administration. The purpose of this bill is to enforce the execution of a trust.

III. By the terms of agreement, Frost in case of a sale of the premises within ten years was to pay Moon one hundred dollars upon demand. But the sale contemplated was to be a sale of "the premises" not of an undivided half thereof. The compensation Frost was to receive, was the excess above one hundred dollars for the half conveyed to him in trust. He had no right to sell his half by itself. It was not conveyed to him for such purpose. It would, if it were so held, be a mere gift, which was not intended.

IV. It appears that on the third day of March, 1855, Ichabod Frost conveyed an undivided half of the premises to Amos H. Boyd, who, on the same day, reconveyed said half to Frost. The conveyance was fraudulent and collusive, and for the purpose of procuring a title to Frost discharged from the trust. The deed was made and executed at the expense of Frost, and there was no consideration at the time of either conveyance passing between the parties thereto. The rule of law is accurately stated in Saunders on Uses and Trusts (Am. ed.,) 211. "If a person purchase of the trustee for a valuable consideration, without notice, he will hold discharged of the trust; but if the original trustee re-purchases the estate he will again be converted into a trustee." The reconveyance to Frost from Boyd, left him in the same condition that he was in before he had collusively and fraudulently parted with the title. He still remained trustee.

V. The tender of an hundred dollars in gold, which Frost made in March, 1855, gave him no new rights. "The premises" had not been sold. It was never the intention of the parties that it was to be a mere sale of half for a given sum. Frost was to sell the whole, and when sold, to pay Moon one hundred dollars, the balance over that sum being the compensation for his agency in the matter. The condition upon which Moon would be entitled

to his hundred dollars never happened, and the tender made was of no avail.

VI. It appears in evidence that Robert Moon, in his life time, made a demand on Frost for a reconveyance; that Duxbury Moon, who is shown to have acquired title by legal conveyance, made a demand in 1859 ; and that on the eleventh or twelfth of May, 1863, Asa Low, as attorney for the complainant, made a like demand for a reconveyance upon said Frost. Frost refused to convey, alleging as a reason that he had conveyed the premises to Boyd, and "could do nothing." At the time of the several demands for a reconveyance proved, no statement was given by Frost of the expenses incurred by him, nor claim made for their payment. The bill bears date August 31, 1868. It matters not whether the defendants are heirs or devisees of Ichabod Frost. They have his title in the one mode or the other. In either event, they have only his rights, and if a demand was necessary and was duly made upon him, they take subject to his liabilities.

VII. The statute of limitations constitutes no bar to the plaintiff's claim. The right to a reconveyance did not attach until April, 1855, for up to that date Frost held the estate in trust. After that date, repeated demands for a reconveyance are shown to have been made on him. Now, "as between trustees and *cestui que trust*, an express trust, constituted by the act of the parties themselves, will not be barred by any length of time; for, in such cases, there is no adverse possession ; the possession of the trustee being the possession of the *cestui que trust*." Hill on Trustees, 264. Time does not begin to run until the trust is openly disavowed by the trustee, who insists upon an adverse right and interest, which is fully and unequivocally made known to the *cestui que trust*. Besides, the bond evidencing the trust is under seal.

VIII. It was not necessary that the bill should be verified by oath, as it is not for the purpose of discovery, nor for an injunction. Rules of Chancery Practice, I, 37 Maine, 581.

The plaintiff's title is clearly established by the evidence, and

there is no rule of equity that requires that those from whom he derives an unquestioned title should be made parties. The same remark applies to the defendants, whose title as set forth in the bill, is established by the proofs and is not controverted by any of the parties to this litigation.

The plaintiff is entitled to a conveyance. But it appears that Ichabod Frost, during the time he held the estate in trust, incurred some slight expenses in the charge of the estate and in the erection of a frail dam upon the premises. The case is therefore referred to a master to ascertain what sum the plaintiff should be held to pay before the defendants should be required to release their interest in the estate, a conveyance of which is sought to enforced by this bill.                *Decree accordingly.*

CUTTING, WALTON, BARROWS, and DANFORTH, JJ., concurred.